UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60723-CV-WILLIAMS
MAGISTRATE JUDGE REID

JAMES GREEN,

    Plaintiff,

v.

SGT. WILLIAMS,
et al.,

    Defendants.
_____/

## REPORT OF MAGISTRATE JUDGE

### I.   Introduction

Plaintiff, James Green, a pretrial detainee confined at Broward County Main Jail, filed this amended complaint *pro se* pursuant to 42 U.S.C. § 1983 alleging Defendants failed to protect him from sexual harassment by inmates, interfered with the grievance process, and retaliated against him for filing a complaint under the Prison Rape Elimination Act ("PREA"). [ECF No. 8]. The Court granted Plaintiff's request to proceed *in forma pauperis* and established a debt in the amount of $350.00. [ECF Nos. 9, 10].

This case has been referred to the Undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive motions. *See* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b), and S.D. Fla. Admin. Order 2019-2.

At present, no defendants have been served with process. For the reasons stated in this Report, the Undersigned recommends that certain claims PROCEED against Defendant Hankerson in his individual capacity and the remaining claims be dismissed.

## II. Analysis

### A. Applicable Law for Screening

Although 28 U.S.C. § 1915(e) applies only to those proceeding *in forma pauperis*, a court has the authority to dismiss a complaint for failure to state a claim regardless of whether the inmate is able to pay the filing fee. 28 U.S.C. § 1915A(b)(1). Additionally, §1915A requires screening of any "civil action in which a prisoner seeks redress from a governmental entity or officer or employee." 28 U.S.C. § 1915A(a). "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted." *Id*. § 1915A(b); *see also Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (*per curiam*) ("A district court may dismiss *sua sponte* a complaint [under § 1915A] if it . . . fails to state a claim." (quotation omitted)).

The standard employed in this screening is the same as the standard used for a motion to dismiss. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). The facts alleged in the complaint are accepted as true; and the complaint will not be dismissed if it "include[s] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1106-07 (11th Cir. 2015) (quotation omitted). Furthermore, courts hold complaints that *pro se* prisoners file to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*).

### B. Facts of the Complaint

Plaintiff sues Defendants Sergeant Williams and Lieutenant Hankerson, officers at Broward County Jail, in their individual and official capacities. [ECF No. 8 at 1-2]. Essentially, Plaintiff alleges that the lack of privacy in the showers at the jail left him vulnerable to "sexual

harassment and sexual abuse" by other inmates because they could see him naked, that Defendants ignored his concerns, and that Defendant Hankerson retaliated against him for complaining. [ECF No. 8, 18]. Plaintiff claims this occurred while housed in Unit 8C1-14 from February 18 through February 22, 2020, and in Unit 8C2-6 from February 22 through March 10, 2020, mostly before, during, and after showering. [*Id*. at 5, 16, 18].

Plaintiff claims that the harassment from other inmate included "sexual comments," "whistling," and "blowing kisses." [*Id*.]. Some comments include: "You[r] body looking so good," "turn around so I can get a better look at what you['re] working with," and "come here and suck my . . ." [*Id*.]. Plaintiff believes that this exposure is "unnecessary" and fits the definition of "sexual misconduct." [*Id*. at 15].

Plaintiff maintains that, on February 20, 2020, Defendant Williams refused to give him access to file a grievance in the kiosk or by medical sick call request. [*Id*. at 6, 15, 19]. Instead, Plaintiff filed a complaint in the jail pursuant to the Prison Rape Elimination Act[1] (PREA) and also filed sick call requests. [*Id*. at 8-9]. Williams refused to acknowledge Plaintiff's PREA complaint and threatened to retaliate. [*Id*. at 14].

The next day, on February 21, 2020, Defendants came to Plaintiff's cell and advised him that his claims were not a valid PREA complaint; and warned if he continued to pursue the claim, they would "punish [him] by limiting [his] privileges." [*Id*. at 14-15, 21]. Defendant Hankerson refused to provide Plaintiff with the names of the inmates responsible for the comments. [*Id*. at 17]. Plaintiff alleges that all of this is a violation of his rights under PREA.

---

[1] Prison Rape Elimination Act of 2003, Pub. L. No. 108-79, 117 Stat. 972 (codified at 34 U.S.C. § 30302). Plaintiff alleges no facts to support a claim of rape or sexual assault.

On February 22, 2020, according to Plaintiff, Hankerson retaliated against Plaintiff by placing him on suicide watch, having him strip naked, and putting him in a "dirty cell" without cleaning supplies. [*Id*. at 8]. Plaintiff claims that he made the PREA report at 7:00pm on February 22, 2020, and at 7:15pm Deputies Joseph and Sura came to his unit, at Hankerson's authorization, placed him in handcuffs, stripped him naked, took his property out of his cell, and placed him on suicide watch in a "dirty" cell. [*Id*. at 17, 19]. Plaintiff describes the cell as "uninhabitable" with "urine, feces, [and] blood stains all over the cell and mattress," trash, etc. [*Id*. at 17, 20]. Plaintiff alleges that he remained in the cell from February 22 through March 10 (sixteen days) and that other officers, at Defendant Hankerson's direction, refused to give him cleaning supplies for the cell.[2] [*Id*.]. Plaintiff states that the grievance kiosk was broken during that period; therefore, he could not file a grievance concerning this conduct. [*Id*. at 8, 20].

Plaintiff names no other persons in the lawsuit. Plaintiff claims that these events are in violation of PREA and jail policies and believes he is entitled to an investigation under PREA. [*Id*. at 4, 16-17].

Plaintiff asserts that as a result of this series of events, he has "suffered psychological [and] emotional damage" "requir[ing] intensive . . . therapy for the rest of [his] life," depression, and insomnia. [*Id*. at 6, 18]. He claims he has "paranoia" and is "hearing inmates' voices in [his] head." [*Id*.]. From Defendant Williams, Plaintiff seeks $10,000,000 in compensatory damages; $50,000,000 in punitive damages; and an "additional $100,000,000" for telling him that his complaints have nothing to do with PREA. [*Id*. at 6, 21]. He seeks $100,000,000 in compensatory damages and $200,000,000 in punitive damages against Defendant Hankerson. [*Id*. at 20].

---

[2] Plaintiff miscalculates by stating he was there for three weeks. [ECF No. 8 at 19].

### III. Discussion

#### A. *Showering Conditions at the Jail Do Not Violate Plaintiff's Right to Privacy*

To the extent Plaintiff asserts that the jail's showering system violates his right to privacy under the Fourth Amendment because "anyone" can see him, his complaint fails to state a claim. "A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and the requirement to ensure institutional security and internal order." *Hudson v. Palmer*, 468 U.S. 517, 527-528 (1984).

The monitoring of naked prisoners is permissible, in fact, sometimes mandatory. *Id.* Still, claims "[depend] on the scope of the intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Hayes v. Marriott*, 70 F.3d 1144, 1147 (10th Cir. 1995) (referring to factors from *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) contesting the constitutionality of a strip search). Courts have regularly upheld the use of guards having full view of inmates taking showers or using the toilet. The Eleventh Circuit has noted, "[w]e do not think it is open to serious dispute that inmates of the same sex may be required to shower together and that guards of that sex may watch them while they are showering to prevent any misconduct." *Powell v. Barrett*, 541 F.3d 1298, 1313 n.6 (11th Cir. 2008).

The Eleventh Circuit has held that prisoners have only a very narrow privacy right involving their genitals and "involuntary exposure of them in the presence of" the opposite gender, "may be especially demeaning and humiliating." *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993). However, it has declined to extend *Fortner* to mean that inmates have the same rights to bodily privacy as free persons. *Padgett v. Donald*, 401 F.3d 1273, 1279 (11th Cir. 2005).

The Fourth Amendment privacy claim should be DISMISSED. Plaintiff simply provides no facts to indicate that the jail's shower system somehow otherwise constitutes a constitutional

violation; and he is not entitled to a private shower or the use of the toilet away from anyone's view.

### B. Deliberate Indifference/ Failure to Protect from Sexual Harassment

Although prison officials have a duty under the Eighth Amendment to protect a prisoner from violence by other prisoners, not "every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Rather, a prison official violates the Eighth Amendment [in the context of a failure to prevent harm] only 'when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk.'" *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016) (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014)).

[However]. . . an inmate must show more than a generalized awareness of risk." *Green v. Hooks*, 2020 WL 57329 *33 (11th Cir. 2019) (internal citations and quotations omitted). For a prison or jail official to be constitutionally liable for failure to protect the safety of an inmate, two requirements must be met. First, the deprivation alleged must be, objectively, "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Hudson v. McMillian*, 503 U.S. 1 (1992). Thus, for a claim based on an alleged failure to prevent harm, an inmate must show that he is or was incarcerated under conditions that pose a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[T]he protection [an inmate] is afforded against other inmates" is a "condition of confinement" subject to scrutiny under the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. at 303.

Second, the prison official who ignores a substantial risk of serious harm to an inmate must have a "sufficiently culpable state of mind," *Farmer v. Brennan,* 511 U.S. at 834. In cases

predicated on prison conditions, that state of mind is one of "deliberate indifference" to the inmate's health or safety. *Wilson v. Seiter*, 501 U.S. at 302-03; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Traditionally, applicable authorities have described "deliberate indifference" as a state of mind more blameworthy than mere negligence or even gross negligence, *Estelle v. Gamble*, 429 U.S. at 104; *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989), and as something more than a lack of ordinary due care for a prisoner's safety. *Whitley v. Albers*, 475 U.S. 312 (1986).

Thus, in order to state a claim of cruel and unusual punishment, the courts have required that a prisoner must allege a conscious or callous indifference to his rights by prison officials. *Brown v. Hughes*, 894 F.2d 1533, 1537-38 (11th Cir. 1990); *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988). Only such a degree of disregard for the prisoner's rights, which offends evolving contemporary standards of decency and is repugnant to the conscience of mankind, separates official conduct that is actionable under Section 1983 from simple negligence which is not. When the plaintiff fails to allege and show proof of such an abuse, what may be an ordinary tort does not rise to the level of a constitutional violation actionable under § 1983. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Estelle v. Gamble*, 429 U.S. at 106.

Here, the fact that other inmates were able to see the Plaintiff when he showered and dressed did not, in and of itself, violate Plaintiff's constitutional rights or create a substantial risk of harm. In his amended complaint, Plaintiff generally alleges that unnamed inmates sexually harassed him with comments but, important to this analysis, does not allege any physical contact, threats, or any facts that would demonstrate Defendants disregarded a substantial risk of harm to him. [ECF No. 8]. Courts have rejected claims that harassment amount to a constitutional violation. *See, e.g., Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002), abrogated on other grounds by

7

*Porter v. Nussle*, 534 U.S. 516 (2002) (finding insufficient plaintiff's allegations that guard asked plaintiff to have sex with her and to masturbate in front of her and others); *Santiago v. O'Connor*, Case No. 3:04 CV 495 SRU, 2004 WL 1638236, at *2-*3 (D. Conn. July 13, 2004) (finding gestures, comments, and mocking insufficient).

### C. Failure to Adhere with Grievance Process is not a Violation of the First Amendment or Right to Procedural Due Process

The Eleventh Circuit in *Moore v. McLaughlin*, 569 F. App'x 656, 659 (11th Cir. 2014), construed an inmate's argument that defendants "failed to respond appropriately to his grievances" as a procedural due process claim. The Court pointed out, however, that a denial of procedural due process requires: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *See Moore*, 569 F. App'x at 659 (quoting *Grayden v. Rhodes*, 345 F. 3d 1225, 1232 (11th Cir. 2003)). The claim failed because inmates are not constitutionally entitled to an administrative grievance procedure. *Moore*, 569 F. App'x at 659 (relying upon *Bingham v. Thomas*, 654 F. 3d 1171, 1177 (11th Cir. 2003)). *See also Doe v. Moore*, 410 F. 3d 1337, 1350 (11th Cir. 2005) ("State-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory.").

Various circuits agree. *See Adams v. Rice*, 40 F. 3d 72, 75 (4th Cir. 1994) ("the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"); *Flick v. Alba*, 932 F. 2d 728, 729 (8th Cir. 1991) (*per curiam*) (holding prison's administrative remedy procedures "do not in and of themselves create a liberty interest in access to that procedure," and that "the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his

8

grievance"); *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir. 1988) ("[t]here is no legitimate claim of entitlement to a grievance procedure").

Consequently, a prisoner's lack of access to a grievance procedure or overall dissatisfaction with a response to a grievance does not articulate a due process claim, as there is no constitutional right to the grievance procedure at all. *See Moore*, 569 F. App'x at 659 (relying upon *Bingham*, 654 F. 3d at 1177).

Here, because Plaintiff's allegations simply do not implicate a constitutionally-protected right, any procedural due process claim against Defendants are to be DISMISSED.

### D. Claims under the Prison Rape Elimination Act (PREA)

Plaintiff's claim concerning the Defendants' failure to investigate his PREA claim fails. As narrated above, Plaintiff contends Defendants refused to acknowledge his PREA complaint and maintains that he is entitled to a PREA investigation. The failure of prison officials to follow their own procedures is not a constitutional violation. This is because jail procedures are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995).

Further, PREA does apply to harassment claims nor does it provide a federal right enforceable in a § 1983 action. *See Hawkins v. Walden,* No. 5-15-CV-208 (CAR), 2016 WL 5660338 at *7 n.66 (M.D. Ga. Sept. 28, 2016) (collecting cases). Section 1983 provides a remedy for conduct by any person who, under color of state law, acts to deprive another person of "any rights, privileges, or immunities secured by the Constitution and laws." *See* 42 U.S.C. § 1983. The PREA provides for the analysis of the incidence and effects of prison rape and funding to protect individuals from prison rape. Title 34 U.S.C. § 30302.

Because Plaintiff's PREA claims against Defendants are not cognizable under § 1983, they should be DISMISSED.

### E.  Retaliation Claims

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *see also Pate v. Peel*, 256 F. Supp. 2d 1326, 1336 (N.D. Fla. 2003). "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing *Farrow*, 320 F.3d at 1248).

A viable complaint must allege that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]." *Mosley*, 532 F.3d at 1276.

Taking Plaintiff's allegations as true for purposes of this analysis, he has made a colorable claim of retaliation against Defendant Hankerson. He complained about his conditions of confinement by filing a PREA claim, was told by Defendant Hankerson that if he continued to pursue the PREA complaint he would "punish" him by limiting his privileges and, within minutes of placing a PREA complaint in the kiosk, was handcuffed, stripped, placed in a suicide suit and put on suicide watch in a "dirty cell," even though he had never indicated that he was suicidal. [ECF No. 8 at 15, 17-18].

The Court should allow the retaliation claim against Defendant Hankerson to PROCEED for directing or otherwise authorizing that Plaintiff be placed on suicide watch, stripped, and reassigned to dirty cell for more than two weeks and denied access to cleaning supplies. *See Skinner v. Casey*, Case No. 1:14-CV-96-WLS-TQL, 2014 U.S. Dist. LEXIS 170932, (M.D. Ga. October 31, 2014) (allowing retaliation claims to go forward where plaintiff was forced to remain in his dirty cell for over 90 hours without access to running water for showering or cleaning the cell). At this early juncture Plaintiff has presented an arguable constitutional claim that should be permitted to proceed.

### F. Unsanitary Conditions of Confinement under the Eighth Amendment

Unsanitary conditions of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective element requires a prisoner to show that his living conditions amounted to a "serious deprivation of basic human needs. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Still, "the Constitution does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. at 832; *Hamm v. DeKalb County*, 774 F.2d 1567, 1569 (11th Cir. 1985) (finding that sleeping on an unsanitary eating table or dirty mattress on the floor does not violate an inmate's Eighth Amendment rights). Limited periods of incarceration in unsanitary conditions are generally insufficient to evidence an Eighth Amendment violation. *See, e.g., Harris v. Fleming*, 839 F.2d

11

1232, 1235 (7th Cir. 1988) (depriving prisoner of toilet paper, soap, toothpaste and toothbrush while keeping him in filthy, roach-infested cell for a period of several days was not a constitutional violation); *Holloway v. Gunnell*, 685 F.2d 150 (5th Cir. 1985) (no claim stated where prisoner forced to spend two days in hot dirty cell with no water). Still, the duration of such conditions may be a considerable factor in determining whether there is a constitutional violation. For example, in *McBride v. Deer,* the court found that a three-day period in a cell covered in human waste without cleaning supplies was sufficient to state an Eighth Amendment claim. 240 F.3d 1287, 1291-92 (10th Cir. 2001).

Here, according to Plaintiff, the cell "was filthy with urine, feces, [and] blood stains all over the cell and mattress. The cell was filled with a repugnant odor. The floor was . . . dirty with food, paper, dustballs, hair, [and] trash. The walls and toilet [were] filled with mildew [and] semen stains." [ECF No. 8 at 17]. Thus, at this stage, Plaintiff has sufficiently stated an Eighth Amendment claim, which should PROCEED against Defendant Hankerson.

### G. Official Capacity Claims

A suit against the Florida Department of Corrections is the equivalent of suing the state. The State of Florida is immune from monetary damages based upon the Eleventh Amendment. *Gamble v. Fla. Dept. of Health and Rehabilitative Services*, 779 F.2d 1509, 1512-13 (11th Cir. 1986). This is so because the Eleventh Amendment of the U.S. Constitution bars suit against a state in federal court absent valid congressional override, waiver of immunity, or consent to suit. *See Wusiya v. City of Miami Beach*, 614 F. App'x 389, 393 (11th Cir. 2015) (alteration added). Section 1983 does not abrogate state sovereign immunity for damage suits; and Florida has not waived its immunity from § 1983 suits. *See id.* A state, and an agency of a state, (i.e. the Florida

Department of Corrections) are thus immune from liability under § 1983. *See Williams v. Robbins*, 153 F. App'x 574, 576 (11th Cir. 2005).

Even suits brought nominally against state officers in their official capacities are included in this Eleventh Amendment bar. *See Simmons v. Conger*, 86 F.3d 1080, 1086 (11th Cir. 1996) (finding district court erred in awarding nominal damages against a judge sued in his official capacity because the relief was barred by Eleventh Amendment). This Eleventh Amendment bar applies regardless of whether the plaintiff seeks money damages or prospective injunctive relief. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (Eleventh Amendment bar to suit against state applies "regardless of the nature of the relief sought").  A suit challenging the constitutionality of an individual state official's actions is not one against the state and, as a result, is not barred by the Eleventh Amendment. *Id.* at 101-02.

Here, Defendants are employees of the Broward County Jail and a suit against the officers in their official capacities is tantamount to asserting a suit against the government entity, which is protected by the Eleventh Amendment bar. Therefore, any claims against Defendants in their official capacities should be DISMISSED. However, as stated above, the claims challenging Defendant Hankerson's actions in his individual capacity should PROCEED.

### H.  Mental and Emotional Damages

Title 42 U.S.C. § 1997e(e) provides that:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act.

The Eleventh Circuit has determined that the phrase "'[f]ederal civil action' means all federal claims, including constitutional claims." *Napier v. Preslicka*, 314 F.3d 528, 532 (11th Cir. 2000) (citing *Harris v. Garner*, 216 F.3d 970, 984-85 (11th Cir. 2000) (*en banc*)). Section §

1997e(e) is an affirmative defense but comes within the purview of the district court's screening under the PLRA where the allegations of the complaint show that it would bar recovery. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Douglas v. Yates*, 535 F.3d 1316, 1320-21 (11th Cir. 2008).

Here, Plaintiff fails to allege any physical injury whatsoever resulting from any alleged constitutional violations, much less any physical injury that is more than *de minimus*. Accordingly, Plaintiff is precluded from recovering compensatory or punitive damages for any mental or emotional injuries.

### IV.   Recommendations

As to Plaintiff's federal constitutional claims, as alleged in the Amended Complaint [ECF No. 8], it is recommended that the matter PROCEED IN PART as follows:

1. Any claims against Defendants alleging that the showering system at Broward County Jail violates Plaintiff's right to privacy should be DISMISSED.

2. Any claims against Defendants for deliberate indifference or failure to protect from sexual harassment should be DISMISSED.

3. Any claims against Defendants for violations of Plaintiff's First Amendment and Due Process rights based on their failure to adhere with the jail's grievance process should be DISMISSED.

4. The official capacity claims against Defendants should be DISMISSED.

5. The PREA claims against Defendants should be DISMISSED.

6. The mental and emotional damage claims against Defendants should be DISMISSED.

7. The First Amendment retaliation claim against Defendant Hankerson, in his individual capacity, should PROCEED.

8. The Eighth Amendment claim of unsanitary conditions of confinement against Defendant Hankerson, in his individual capacity, should PROCEED.

Objections to this report may be filed with the District Court Judge within fourteen days of receipt of a copy of the report. Failure to do so will bar a de novo determination by the District Court Judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

Signed this 8th day of October, 2020.

<br>

_____
UNITED STATES MAGISTRATE JUDGE

cc:   James Green
     222000068
     Broward County Main Jail
     Inmate Mail/Parcels
     Post Office Box 9356
     Fort Lauderdale, FL 33310
     PRO SE